## Case No. 1,107.

### BATTEN v. TAGGERT.

[2 Wall. Jr. 101;[1] 8 Leg. Int. 126; 53 Jour. Fr. Inst. 96.]

Circuit Court. D. Pennsylvania.   Sept. 11, 1851.[2]

PATENTS FOR INVENTIONS—DEDICATION OF AN INVENTION TO THE PUBLIC — SURRENDER AND REISSUE.

1. A description, by an applicant for a patent, of a machine in which he sets forth his invention to be for a combination of machinery, not giving notice that he claims any part as new, is a dedication of that part to the public.

[See note at end of case.]

2. After such part has passed into public use, the dedication cannot be revoked by surrender and re-issue of the patent, nor otherwise; neither the 13th section of the act of [July 4,] 1836. [5 Stat. 122,] nor the seventh section of the act of [March 3,] 1837, [5 Stat. 193,] relating to amending of patents. authorizing a new patent for an invention different from that originally patented.

[Disapproved in Hussey v. Bradley, Case No. 6,946. Cited in Smith v. Merriam, 6 Fed. 718.]

[See note at end of case.]

---

[1] [Reported by John William Wallace, Esq.]
[2] [The judgment rendered upon a subsequent trial of this cause was reversed in 17 How. (58 U. S.) 77.]

[At law.  Action by Batten against Taggert for infringement of letters patent.  Plaintiff heretofore had a verdict in his favor.  Heard on defendant's motion for a new trial.  Granted.  Afterward, upon the new trial, defendant had judgment, but this was reversed by the supreme court in Battin v. Taggert, 17 How. (58 U. S.) 77.  See note at end of case.]

Batten obtained a patent in 1843 for a machine, specifying his invention to be for the manner in which he had arranged and combined certain parts, and not specifying that he had invented any of the parts. In truth, he was the inventor of one or more of the parts.  Accordingly in 1849, under .the acts of congress hereafter quoted, he surrendered his patent of 1843, and took out a new one describing essentially the same machine as the former one did, but claiming as new a particular part.  On this new patent he brought this suit, and having clearly shown great merit in his invention of this part, recovered heavy damages.  A motion for a new trial was made, the strong ground for the new trial being that he had dedicated his invention to the public by his specification of 1843, not claiming it, and by making no claim of it otherwise until his specification of 1849.

One act of congress—July 4, 1836, § 13, [5 Stat. 122]—relating to patents, and above referred to, ordains, that whenever any patent shall be inoperative or invalid by reason of a defective or insufficient description or specification, or by reason of the patentee's claiming in his specification as his own invention more than he had a right to claim as new; if the error has arisen by inadvertency, accident or mistake, and without any fraudulent or deceptive intention, it shall be lawful for the commissioner, upon the surrender to him of such patent, to cause a new patent to be issued to the said inventor for the same invention.  And another act—March 3, 1837, § 7, [5 Stat. 193]—ordains "that whenever any patentee shall have, through inadvertence, accident or mistake, made his specification of claim too broad, claiming more than that of which he was the original or first inventor, some material and substantial part of the thing patented being truly and justly his own, any such patentee may make disclaimer of such parts of the thing patented as the · disclaimant shall not claim to hold by virtue of the patent or assignment, stating therein the extent of his interest in such patent.  And such disclaimer shall thereafter be taken and considered as part of the original specification."

THE COURT, in an elaborate opinion by KANE, District Judge, held that the invention having been in use six years before Batten claimed it as his, had become public; and that having become public, he could not reclaim it by his patent of 1849; that the. sections of the act of congress above quoted did not help his case; that the patentee under them might make his specification more ac-

curate, or restrict the limits of his claim, but that his re-issued patent, taking the place of the one he had surrendered, could only be for the same invention. The invention of the part being very ingenious, the court reluctantly entered an order of

New trial granted.

[NOTE. Upon the new trial the defendant had judgment. This was reversed by the supreme court in Battin v. Taggert. 17 How. (58 U. S.) 77. Mr. Justice McLean, in the course of his opinion, said: "The plaintiff, by a surrender of that patent, and the procurement of the patent of 1849, with amended specifications, abandoned his first patent, and relied wholly on the one reissued. The claim and specifications in this patent, as amendatory of the first, were within the 13th section of the act of 1836. It is said with entire accuracy in the charge, in regard to the amended specification of the patent of 1849, that it 'described essentially the same machine as the former one did, but claimed, as the thing invented, the breaking apparatus only.' And this the patentee had a right to do. He had a right to restrict or enlarge his claim, so as to give it validity, and to effectuate his invention. * * * It was the right of the jury to determine from the facts in the case whether the specifications, including the claim, were so precise as to enable any person skilled in the structure of machines to make the one described. This the statute requires, and of this the jury are to judge. The jury are also to judge of the novelty of the invention, and whether the renewed patent is for the same invention as the original patent; and they are to determine whether the invention has been abandoned to the public. There are other questions of fact which come within the province of a jury, such as the identity of the machine used by the defendant with that of the plaintiff's, or whether they have been constructed and act on the same principle."

[For another case involving this patent, see Batten v. Silliman, Case No. 1.106.]